**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ANDREA CISCO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:25-cv-295-DWD** |
| | ) | |
| **LIBERTY MUTUAL PERSONAL INSURANCE COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

## I. INTRODUCTION

Before the Court are Plaintiff Andrea Cisco's Motion for Summary Judgment (Doc. 23) and Defendant Liberty Mutual Personal Insurance Company's Motion for Judgment on the Pleadings (Doc. 24). Both motions address the issue of the other's compliance with the appraisal process under Cisco's homeowner's policy. The motions have been fully briefed and are ripe for consideration. For the reasons set forth below, both motions will be **DENIED**.

## II. BACKGROUND

Cisco alleges a residential fire loss that occurred on November 4, 2023. She made a demand for appraisal on October 31, 2024. A dispute followed with Liberty where it contended that Cisco had not provided necessary documentation and that the matter was not ripe for appraisal. More specifically, the dispute was regarding whether a disagreement existed as to the valuation of "certain items of personal property" and

"additional living expenses." (Doc. 1, Ex. 1). She pleads that her Policy contains an appraisal clause and that, after she demanded appraisal on October 31, 2024, Liberty Mutual failed to timely appoint an appraiser and that an umpire is therefore required. (Doc. 1, Ex. 1).

Liberty filed its motion to dismiss (Doc. 9) under Rule 12(b)(6) which the Court denied after having stricken from consideration a November 2024 email chain and associated factual assertions (Doc. 9-1) because, "at most, it provided evidence bearing on a defense in the sense that either the post-loss conditions were not satisfied or that no "disagreement" existed." (Doc. 19) The Court then ordered Liberty to file an answer to the complaint. It did so but included two affirmative defenses and a "Counterclaim for the Appointment of an Appraisal Umpire". (Doc. 21) It again attaches to its Motion the same November 2024 email chain (Doc. 21-2) that it had attached to its Motion to Dismiss. (Doc. 9-1)

Cisco responded to Liberty's Counterclaim with an affirmative defense of estoppel. (Doc. 22). Cisco argues that since Liberty did not timely engage in the appraisal process called for under the policy it is estopped from proposing umpire candidates.

According to Liberty, it complied with its obligations under the policy to nominate an appraiser and a slate of umpires. It indicates that within 15 days of the denial of its Motion to Dismiss, it nominated its slate of umpires and within 20 days of the denial, it nominated as its appraiser Mark Davis. Still, those nominations occurred approximately two years after the fire loss. (Doc. 23, p. 2–4). For its part, Liberty claims that it was not required to choose an appraiser or nominate an umpire until the Court ruled on the

Motion to Dismiss because Cisco had not produced necessary documentation of loss. (Doc. 28, ¶ 28)[1]

## III. APPLICABLE LAW

Federal Rules of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). But the applicable analysis depends on the function of the motion. A challenge to the sufficiency of the complaint mimics in large part a Rule 12(b)(6) motion and is likewise governed by the plausibility standard. *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 518- 519 (7th Cir. 2025) (explaining that under Rule 12(c) and Rule 12(b)(6) the factual allegations must "raise a right to relief above the speculative level for the suit to proceed any further"). But "either party can use Rule 12(c) motion to dispose of the case on the basis of the underlying substantive merits". *Id*. Additionally, a 12(c) motion "also provides a vehicle for the defendant to raise several of the defenses enumerated in Rule 12(b) —including failure to state a claim upon which relief can be granted — after the close of the pleadings." *Id.*

When a Rule 12(c) motion is made, judgment on the pleadings is proper where no disputed issue of material fact remains and "the movant is entitled to judgment as a matter of law." *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

[1] Liberty Mutual moved to dismiss on three related grounds. First, it asserted that the parties are "not at issue on the appraisal" because, in Liberty Mutual's view, there was not yet a cognizable disagreement about the amount of loss. (Doc. 9, ¶¶ 7-10). Second, it contended Cisco failed to satisfy her "Duties After Loss" as conditions precedent, i.e., by supplying receipts and other documentation for claimed items and providing records on request. Id. at ¶¶ 17-26 (quoting Doc. 1, Ex. 1, Policy § 1, Conditions ¶¶ 2(e), 2(f)(2)). Third, relying on Illinois authority, Liberty Mutual argued that because Cisco purportedly did not produce the requested information (or otherwise fully comply with post-loss obligations), she cannot maintain "any action" on the Policy. Id. ¶¶ 27—34.

When a Rule 12(c) motion attempts to resolve a case "on the basis of the underlying substantive merits," courts apply the summary judgment standard and consider only the contents of the pleadings. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993);

Summary judgment is proper if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). "Proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment." *USA Gymnastics v. Liberty Insurance Underwriters, Inc*., 27 F.4th 499, 512 (7th Cir. 2022). See also, Zhao v. State Farm Fire & Casualty Co., 2025 Il. App. (2d) 240723, ¶ 21 ("The construction of a an insurance contract presents a question of law.")

**IV. DISCUSSION**

It is readily evident from the record so far developed and presented by the parties in support of their respective motions that there are facts so much in dispute that neither

a motion for judgment on the pleadings nor a motion for summary judgment should be granted. First, the areas of agreement. The policy provides, in relevant part:

> **APPRAISAL**: If you and we fail to agree on the amount of loss either may demand an appraisal of the loss. In this event each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

(Doc. 21-1, p. 16, ¶6).

It is also not in dispute that there was a fire that did damage to Cisco's home and personal property. In fact, Liberty has made payments toward some of the loss suffered by Cisco. Nevertheless, Cisco, believing that the parties had failed to agree on the amount of the loss, made a demand for appraisal in October 2024 and named an appraiser. It is also not in dispute that Liberty chose neither an appraiser nor proposed a slate of umpires until 2-3 weeks after this Court ruled on its Motion to Dismiss in October 2025. Little more is agreed upon.

The conflict centers on whether the Policy's "Appraisal" provisions were initiated such that the parties should select their appraisers. Cisco says that the parties failed to agree on the amount of the loss suffered by her and that is enough to trigger the appraisal

provision. Liberty says that it was not clear in November 2024, that there was a "disagreement" between the parties regarding the total personal property loss and additional living expenses and, therefore, the appraisal process has not been properly initiated. (Doc. 21-2)

Now Liberty argues that the non-payment of the remaining losses and the refusal to select an appraiser was due to Cisco's failure to comply with her duties under the "Conditions" of the policy. (Doc. 28, p.8, ¶ 8-9) It has pled a counterclaim for the selection of an umpire and also posits two affirmative defenses. Affirmative Defense No. 1 alleges that Cisco had a duty under the policy to generally provide documentation of loss but she failed to fulfill that duty. Liberty's Affirmative Defense No. 2 alleges that Cisco's fulfillment of the duty to provide documentation is a prerequisite to bringing suit. (Doc.21, pp. 5-8) Cisco also asserts the affirmative defense of estoppel.

The Policy's "Section I – Conditions" requires that the insured prepare an inventory of personal property, "attach all bills, receipts and related documents that justify the figures in the inventory" and provide Liberty with "records and documents [it] requests." (Doc. 1-1, p. 24). Liberty claims that Cisco did not comply with requests from Liberty to provide documentation, and, as a result, Liberty was unable to verify the amount Cisco was claiming. (Doc. 28, p. 8). Liberty goes on to argue that Cisco's failure to abide by her post-loss duties and to provide documentation makes proceeding with appraisal absurd. (Doc. 28, pp. 9-11, ¶¶ 41-20).

Whether there was indeed a disagreement as to the proper amount of loss raises factual issues as well. It appears that the process of working through the claim for a

variety of losses was nearing an end but was still on going, at least as to personal property losses and living expenses. It is unclear from the record whether Cisco provided the documents requested, or whether those that were provided adequately supported the outstanding claims. Correspondence from Liberty suggests that it requested but had not yet received certain requested documentation before the claim could be completed. (Doc. 9-1). Therefore, as it argues, no disagreement then existed.

Further, neither the pleadings standing alone nor the factual record can support a summary determination because it is unclear whether there was, in fact, a disagreement sufficient to trigger the appraisal process under the policy. Much of what each party seeks depends on whether Cisco complied with her post-loss policy obligations. Liberty's affirmative defenses go directly to that question while its Counterclaim depends entirely on whether she fulfilled her duties. Similarly, Cisco's motion presupposes the existence of a disagreement, and determination of whether it existed depends on facts not in the record. In short, neither the pleadings nor the facts contained in the record leave room for summary determination.

Another bar to a summary determination is the activities following Cisco's refusal to name an appraiser. The record reveals what appears to be a possible shift in Liberty's rationale for its refusal to nominate an appraiser. Liberty's Counsel, James P. DuChateau, believes that the Court's Order denying Liberty's Motion to Dismiss was a "*de facto* order compelling Liberty Mutual to participate in the appraisal" and pledged that Liberty will "follow the letter and spirit of that Court Order." (Doc. 23-2) It is not clear what about the Court's Order caused that belief because, as noted, that Order addressed whether the

Complaint passed 12(b)(6) muster. Nevertheless, that apparent shift came only after the Court ruled on its Motion to Dismiss and, depending on what evidence might be developed in that regard might well impact on the question of whether a valid basis for its refusal existed.

Further, each side has presented affidavits in support of their positions on the motions. The affidavits purport to state certain facts. Some facts are in conflict. For example, Dan Long, Cisco's public adjuster, asserts that the claim was "ripe" for appraisal. (Doc. 23-1). In contrast, Liberty proffers the affidavit of Robyn Famiglietti, Senior Claims Resolution Specialist for Liberty, who asserts that "Liberty Mutual had not been able to reach a determination as to certain portions of Plaintiff's additional living expenses component of her claim, needing further documentary materials verifying the necessity of these claimed expenses." (Doc. 28-2, ¶ 7). So, granting either Cisco's Motion for Summary Judgment or Liberty's Motion for Judgment on the Pleadings would require the Court to weigh conflicting pleadings, submissions and affidavits of record. Neither Rule 12(c) nor Rule 56 allows summary determinations where such conflict exists.

## V. CONCLUSION AND DISPOSITION

Because there are genuine issues of material fact that are disputed, neither Cisco's Motion for Summary Judgment nor Liberty Mutual's Motion for Judgment on the Pleadings should be granted.

Accordingly, Cisco's Motion for Summary Judgment (Doc. 23) is DENIED. Likewise, Liberty Mutual's Motion for Judgment on the Pleadings (Doc. 24) is DENIED.

By separate Order the Court will set this matter for Bench Trial and pre-trial conference.

**SO ORDERED.**

Dated: September 29, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.09.29 12:57:09 -05'00'

DAVID W. DUGAN
United States District Judge